**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America, | Crim. No. 10-339(8) (PJS/JJK) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| 8.   Javier Enrique Torres, a/k/a J.T., | |
| Defendant. | |

Jeffrey S. Paulsen, Esq., Assistant United States Attorney, counsel for Plaintiff.

Bruce D. Nestor, Esq., De Leon & Nestor, LLC, counsel for Defendant Torres.

This matter is before the Court on Defendant Javier Enrique Torres's Motion to Suppress Evidence Obtained by Electronic Surveillance. (Doc. No. 282.) This Court held a hearing on the motion on July 6, 2011. The Government previously submitted exhibits, including applications for three wiretaps with attachments, and the orders authorizing those wiretaps. This Court has already ruled on the probable cause and necessity of electronic surveillance as to Defendants Pantoja and Rosales. (Doc. Nos. 167, 244.) This Court's March 24, 2011 Report and Recommendation as to Defendant Pantoja was adopted by United States District Court Judge Patrick J. Schiltz on April 11, 2011. (Doc. No. 186.)

This matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For the reasons stated below, this Court recommends that Defendant's motion be denied.

## BACKGROUND

Defendant Torres(8) and four Co-Defendants are indicted on charges of conspiracy to distribute methamphetamine, cocaine, and marijuana in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).[1]  (Doc. No. 239.)   Defendant Torres is also charged with one count of distribution of methamphetamine in violation of Title 21, U.S.C. §§ 841(a)(1) and 841(b)(1)(B).  (*Id.*)

During summer 2009, law enforcement began investigating Noe Alamos Pantoja, Defendant Torres and other individuals for their involvement in a drug-trafficking organization. (Gov't Ex. 1.) Detective Jeffrey Miller became involved in that investigation as a member of the DEA task force. *(Id.)* Prior to the wiretap applications for Defendant Pantoja's telephone, Detective Miller worked with a number of confidential sources in the investigation of Defendant Pantoja and the Alamo drug trafficking organization. (*Id.*) During that time, he also recorded and monitored phone calls using his confidential sources, had surveillance on Defendant Pantoja, Defendant Torres, and other

---

[1]  There are five Defendants in the Second Superseding Indictment filed on May 11, 2011.  The original Indictment charged six Defendants, and the Superseding Indictment charged seven Defendants.  Those Defendants listed in the Second Superseding Indictment retained their Defendant number designations from the preceding Indictments.

individuals, and had reliable confidential sources ("CS 1", "CS 2", and "CS3") providing information about various members of the drug trafficking organization, including Defendant Torres. (*Id.*) For example, CS2 identified Minnesota Driver's license photographs of Defendant Torres and other members of the Alamo drug trafficking organization as associates who sold cocaine and methamphetamine at the direction of Noe Alamos Pantoja. (*Id.* at 10.) Detective Miller also believed that CS2 actually made purchases of cocaine from various members of the Alamo organization, including Defendant Torres. (Gov't Ex. 1A at 17.)

Further, through his investigation, Detective Miller received "toll information" to obtain phone numbers in connection with the calls of the various members of the drug trafficking organization, but was unable to identify the subscribers of many of those telephone numbers. (Gov't Exs. 1, 1A, and 2.) Finally, Detective Miller stated that there is probable cause that Defendant Torres, other members of the Alamo drug trafficking organization referenced in the warrant applications, and individuals yet to be identified, "have committed, are committing, and will continue to commit violations" of the various narcotics statutes. (*Id.*)

## DISCUSSION

As noted above, this Court has already ruled on the issue of electronic surveillance with respect to Defendants Pantoja and Rosales, and the

Government previously submitted the affidavits of Detective Miller, the relevant warrant applications, and court orders.

In its March 24, 2011 Report and Recommendation relating to Defendant Pantoja, which was adopted by the Honorable Patrick J. Schiltz on April 11, 2011, this Court concluded that the Government has met the "necessity requirement" for a wiretap and that Detective Miller's 40-page wiretap affidavits extensively detailed target subjects, the basis of information, and the facts establishing probable cause. (Doc. No. 167 at 5–6; *see* Gov't Hr'g Exs. 1, 1A, and 2.)  This Court found that the wiretaps were requested for the purpose of discovering the full scope of the conspiracy and the full extent of the criminal activities, and to identify and successfully prosecute each member of the organization, including sources and customers.  This Court also found that Officer Miller's affidavits in support of the wiretap authorizations detailed the conventional investigative techniques used by law-enforcement officers before they sought the wiretap authorizations, showed the difficulties law-enforcement officers encountered, and explained why the investigative methods that were attempted failed to discover the full scope of the conspiracy. (Doc. No. 167 at 5–6.)

Further, in its May 26, 2011 Report and Recommendation relating to Defendant Rosales, this Court again found that the wiretapping was necessary, that there was sufficient probable cause underlying the warrants, that there were no other Fourth Amendment violations, and therefore recommended that

Defendant Rosales's motion to suppress evidence of electronic surveillance be denied.

In the current motion, Defendant Torres does not present any additional evidence—aside from boilerplate allegations—in support of suppression.  "It is well established that the burdens of production and persuasion generally rest upon the movant in a suppression hearing." *United States v. Starks*, 193 F.R.D. 624, 629 (D. Minn. 2000) (quoting *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977), *cert. denied*, 431 U.S. 932, 97 (1977)); *see also United States v. Phillips*, 540 F.2d 319, 325 (8th Cir. 1976) (stating that the ultimate burden of proof is on the defendant who seeks to suppress evidence).  "At a minimum, it is defendant's burden to come forth with some evidence and argument to support his position that evidence . . . should be suppressed." *United States v. Rosetter*, Crim. No. 10-83 (JNE/JSM), 2010 WL 5184991, at *23 (D. Minn. Oct. 1, 2010) (citing *Starks*, 193 F.R.D. at 629) ("[E]ven in those circumstances where the Government has the ultimate burden of persuasion, Defendant has the initial burden of making a prima facie showing of illegality."). And "[f]ailure to provide the Court with any support for the motion is a sufficient basis for denial of the motion." *Rosetter*, 2010 WL 5184991, at *23.  Defendant Torres has not met his burden.  Accordingly, as with Defendants Pantoja and Rosales, this Court finds that the wiretapping was necessary, that there was sufficient probable cause underlying the warrants, and that there were no other Fourth Amendment violations, and therefore recommends that Defendant's

motion to suppress evidence of electronic surveillance be denied.[2]

## RECOMMENDATION

Based on the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.   Defendant Torres's Motion to Suppress Evidence Obtained by Electronic Surveillance (Doc. No. 282), be **DENIED.**


Date:  July 7, 2011

                                                *s/Jeffrey J. Keyes*
                                                JEFFREY J. KEYES
                                                United States Magistrate Judge

---

[2]   Even if probable cause did not exist, there were facially valid wiretap orders, and therefore the good-faith exception to the exclusionary rule, established in *United States v. Leon*, 468 U.S. 897 (1984), would have to be considered.  The *Leon* good faith exception applies to wiretap authorization orders as well as to traditional search and seizure warrants.  *United States v. Moore*, 41 F.3d 370, 376 (8th Cir. 1994). "Under the good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (alteration in original) (quotations omitted). "When assessing the objective [reasonableness] of police officers executing a warrant, [the Court] must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *Id.* at 431 (alteration in original) (quotations omitted).  Here, this Court concludes that the good-faith exception would apply.  There is no evidence that the issuing judges were intentionally or recklessly misled by the information provided in any of Detective Miller's supporting affidavits.  Nor is there evidence to suggest that the officers' reliance on the wiretap orders was not in good faith, or that the officers' reliance was not reasonable.  For these reasons, this Court concludes that the evidence seized as a result of the execution of the wiretap orders need not be suppressed.

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **July 19, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief by **July 23, 2011**.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.